Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 105 | **DATE** | 8/30/2004 |
| **CASE TITLE** | Woolridge vs. Barnhart | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendant's Motion to Alter or Amend Judgment

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due _____. Reply to answer brief due _____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
      ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons set forth on the reverse side of this minute order, the Defendant's Motion to Alter or Amend the Judgment [doc. 19] is DENIED. The Court, on its own motion, issues the attached corrected memorandum opinion and order that should replace the opinion originally issued on March 30, 2004.

(11) ■ [For further detail see order on the reverse side of the original minute order.]

| | No notices required, advised in open court. | | **Document Number** |
|---|---|---|---|
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | SEP 8 2004 | |
| | Notified counsel by telephone. | date docketed | 21 |
| ✓ | Docketing to mail notices. | docketing deputy initials | |
| | Mail AO 450 form. | | |
| | Copy to judge/magistrate judge. | date mailed notice | |
| | courtroom deputy's initials | | |
| | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOSEPH WOOLRIDGE | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 03 C 0105 |
| v. | ) |
| | ) |
| | ) HONORABLE DAVID H. COAR |
| JO ANNE BARNHART Commissioner of Social Security, | ) ) |
| | ) |
| Defendant. | ) |

SEP 0 8 2004

## CORRECTED MEMORANDUM OPINION AND ORDER

Joseph Woolridge is currently 62 years old. He has a history of medical problems with his legs, feet, and hips for which he has claimed disability and sought social security benefits. He has appealed the denial of his request for benefits to this court. Both Woolridge and the Commissioner have moved for summary judgment. For the reasons stated below, the Court DENIES the Commissioner's motion, GRANTS Willis' motion and REMANDS the case for proceedings consistent with this opinion.

## Background

Plaintiff Joseph Woolridge ("Plaintiff" or "Woolridge") began having problems with his legs when he sustained a fracture to his left knee when he was struck by a car in 1985. Following the accident, Woolridge underwent successful orthopedic surgery to repair his knee. For a number of years, Woolridge exhibited a full recovery and sustained no ill effects from the injury. In 1998, Woolridge slipped on some ice and injured his right hip. He claimed that the injury resulted in a right hip fracture, but the x-rays of Woolridge's hip and back do not show any type of fracture. Woolridge nevertheless complained of significant difficulty ambulating, severe pain

1



in his legs, and numbness in his left foot. In addition, he suffers from severe psoriasis, which causes itching lesions over 80 percent of his body.

Between 1998 and 2001, Woolridge was financially unable to seek regular treatment for his medical complaints. During that time, the record reveals he went to an oupatient clinic at the Evanston Northwestern Healthcare facility at least three times. He visited on August 7, 1998, when he complained of pain in his right hip and leg from his fall which the report dates as March 10, 1998. (R. 146) Woolridge also complained of psoriasis. The report of the August 7, 1998 visit also notes that he was "seen in ER 5/98 for cont. pain" (R. 146), but there are no records from that visit in the Administrative Record. He visited the outpatient department again on October 9, 1998, again complaining that the bottom of his right foot gets numb while walking and of psoriasis. (R. 149) His final documented visit to Evanston Northwestern Healthcare facility during this time period was on July 17, 1999. The documentation of this visit consists of a diagnostic radiology report indicating an old fracture deformity of the tibial plateau and degenerative change about the knee joints. (R. 145)

In an Internal Medicine Consultative Examination Report for the Bureau of Disability Services dated June 1, 2001, Dr. Michael Raymond, an examining physician, indicated that Woolridge had limited left knee flexion to 110 degrees and had difficulty arising from a chair due to left knee pain. Woolridge's gait was antalgic, favoring the left leg. He could "walk 50 feet without support, though with difficulty and increasing degrees of pain." (R. at 129). Dr. Raymond also noted that Woolridge "exhibit[ed] diminished sensation along the S1 dermatome level" in his left foot. (R. at 130).

On February 1, 2002, Dr. Lisa Shives noted that Woolridge has a history of chronic left leg pain and weakness dating from the motor vehicle accident. (R. at 150) Dr. Shives noted that Woolridge could not walk or stand for more than fifteen minutes nor could he lift any weight greater than ten pounds.

Woolridge filed an application for disability insurance benefits and Supplemental

2

Security Income (SSI) benefits on May 8, 2001. In his initial application, Plaintiff noted an onset of disability of March 10, 1998. (Tr. 156) He later alleged onset of disability on January 20, 1998. The claim was denied initially and on reconsideration. Plaintiff filed a request for a hearing and a hearing was held on July 9, 2002 before Administrative Law Judge (ALJ) Cynthia Bretthauer. The ALJ issued her decision on August 30, 2002, finding Plaintiff was not disabled. Plaintiff appealed that decision to this Court.

## Standard of Reviewing the Commissioner's Final Decision

Judicial review of the Commissioner's final decision is limited. This Court determines whether substantial evidence in the record as a whole supports the decision to deny benefits. See Pope, 998 F.2d at 480; See Wolfe v. Shalala, 997 F.2d 321, 322 (7th Cir.1993). "Substantial evidence," in this context means evidence that "a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also Micus v. Bowen, 979 F.2d 602, 604 (7th Cir. 1992). The Court does not "reevaluate the facts, reweigh the evidence, or substitute its own judgment." Luna v. Shalala, 22 F.3d 687, 680 (7th Cir.1994) (citation omitted). The Court will affirm the Commissioner's decision if it is reasonably drawn from the record and is supported by substantial evidence, even if some evidence may also support the claimant's position. See 42 U.S.C. §§ 405(g), 1383(c)(3). Nevertheless, in making his decision, the ALJ must articulate some minimal basis for the conclusions that he reaches so that the reviewing court may "trace the path" of the ALJ's reasoning. See Diaz v. Chater, 55 F.3d 300, 307-08 (7th Cir. 1995). And, although the ALJ may credit certain evidence and discredit other evidence, he may not simply ignore evidence favorable to the claimant in articulating the basis for his decision. See Groves v. Apfel, 148 F.3d 809, 811 (7th Cir. 1998).

## The Statutory and Regulatory Framework

To establish disability under the Social Security Act, plaintiffs must satisfy two conditions. First they must have a physical or mental impairment that is expected to be fatal or that has lasted for a continuous period of at least twelve months. Second, they must show that

the impairment or impairments prevent them from engaging in substantial, gainful, employment. See 42 U.S.C. § 1382c(a)(3). It is the claimants' burden to show a disability. See, e.g., Steward v. Bowen, 858 F.2d 1295, 1297 n.2 (7th Cir. 1988).

The Social Security regulations require the fact finder to follow a five-step inquiry to determine whether a claimant is disabled. See 20 C.F.R. S 404.1520. The sequential five-step inquiry requires the Commissioner to determine whether a claimant: (1) is not doing substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals one listed by the Commissioner; (4) can perform her past work; and, (5) is capable of performing any work in the national economy. See id.

## Review of the Commissioner's Final Decision

The ALJ found that Woolridge was not disabled at step four of the five-step inquiry because he could perform his past work as a cashier. In reaching that assessment, the ALJ had to establish the Plaintiff's residual functional capacity (RFC). The ALJ found that Woolridge's "medically determinable impairments preclude the following work-related activities:

> lifting more than 20 pounds occasionally or 10 pounds frequently; standing and/or walking approximately 2 horus in an eight hour workday; sitting for more than a total of 6 horus in an eight hour workday; repetitive operation of foot controls with the left foot; climbing, balancing stooping, kneeling, and crouching more than occasionally; crawling; and understanding, remembering and/or carrying out more than simple, unskilled jobs. (R. at 12)

The ALJ determined that Woolridge's "past relevant work, as a cashier [did not] require the performance of work-related activities precluded by the residual functional capacity limitations." (R. at 16)

Plaintiff asserts in his Motion that the ALJ committed four errors which require reversal and/or remand for further proceedings. The first and second errors relate to the ALJ's assessment of Dr. Shives' opinion. Plaintiff claims that the ALJ's failure to give controlling or great weight to the opinion of Dr. Shives as required by 20 C.F.R. § 404.1527(d) and the failure to contact Dr. Shives for clarification pursuant to 20 C.F.R. § 404.1512(e) and SSR 96-2p both independently require reversal and/or remand. The third is an alleged error of fact in failing to specify the

4

duties of Woolridge's relevant past work before making a finding that he was capable of performing the tasks required by the job of cashier. The final alleged error is that the ALJ's determination that the Plaintiff was not credible.

### 1. THE ALJ'S ASSESSMENT OF DR. SHIVES' OPINION

Plaintiff asserts that the ALJ was required to give Dr. Shives' opinion controlling weight because she was a treating physician. Although the ALJ does not specify the reasons for so finding, in her determination she made a clear finding that Dr. Shives was an examining physician, not a treating physician. (R. at 14) ("The undersigned acknolwedges an *examining* physician's opinion that is inconsistent with the residual functional capacity herein.") (emphasis added). Under 20 C.F.R. § 404.1512, Dr. Shives was clearly a treating physician, not an examining physician, as Plaintiff only visited her in the context of a treatment relationship. The regulations require the ALJ to give a treating physician's opinion controlling weight if it is supported by objective medical evidence and consistent with other medical evidence in the record. See 20 C.F.R. § 404.1512(d). If, however, an ALJ does not give controlling weight to the treating physician's opinion, the ALJ is required to evaluate the length and frequency of the examinations and the nature and extent of treatment that the treating physician provided. See 20 C.F.R. § 404.1512(d)(2).

In this case, the ALJ did not undertake the evaluations of Dr. Shives' testimony that the regulations require. The ALJ properly noted that Dr. Shives' opinion differed from others in the record in that her assessment of Woolridge's capabilities was more restrictive than the other medical opinions. (R. at 14) Beyond that, however, the ALJ made a unilateral determination that if Dr. Shives' opinion was accurate, there should be "more serious objective findings throughout the medical file." (R. at 14) She went on to declare that Dr. Shives should have pursued "more aggressive treatment measures" for "an individual . . . as truly limited as" Woolridge. (R. at 14). The Seventh Circuit has cautioned "adminstrative law judges of the Social Security Administration" to resist "the temptation to play doctor" because "lay intuitions about

5

medical phenomena are often wrong." Schmidt v. Sullivan, 914 F.2d 117, 118 (7th Cir. 1990). It appears that the ALJ was unable to resist the temptation in this case. Other than substituting her own judgment for the medical opinion in this case, the ALJ offers no foundation for her assertion that Dr. Shives should have "pursued more aggressive treatment measures."

Elsewhere in her determination, the ALJ noted that Woolridge did not frequently seek medical services, but she does not rely on that in her credibility determination about Dr. Shives. Instead, she uses this information to undermine Woolridge's credibility. The determination about Woolridge's credibility is and should be entirely separate from the determination of his treating physician's credibility. The ALJ did not evaluate the length and frequency of Doctor Shives' examinations or the nature and extent of Dr. Shives' treatment in determining what weight to give her opinion. Instead, she improperly relied on her assessment of Woolridge's credibility (which is somewhat suspect, as discussed below) to discount Dr. Shives' medical opinion.

The ALJ also notes that the state agency physicians "discount[ed] Dr. Shives' opinion" when they made their RFC determination. (R. at 14) The record clearly reflects that the state agency physicians were unaware of Dr. Shives' opinion at the time they rendered their own, so it was impossible for them to have considered it, much less to have discounted it. (R. 137) Here, the ALJ is inventing facts not in the record in support of her assessment of Dr. Shives' medical opinion. This is not permitted under the law.

Instead of inventing facts outside of the record, what the regulations contemplate in a situation such as this is that the ALJ should make "every reasonable effort to recontact the source for clarification of the reasons for the opinion." SSR 96-5p, available at 1996 WL 374183, at *6. If the ALJ had undertaken a proper assessment of Dr. Shives' opinion pursuant to the regulations, the failure to recontact Dr. Shives might not justify a remand in this case. In light of the failure to undertake a proper assessment of Dr. Shives' opinion, however, the failure to recontact her for clarification only compounded the error.

6

These errors relating to the assessment of Dr. Shives' medical opinion require reversal and remand. On remand, the ALJ should assess Dr. Shives' opinion in the manner that the regulations require and, if necessary, contact Dr. Shives for clarification of her opinion.

2. ALJ'S DETERMINATION THAT PLAINTIFF COULD WORK AS A CASHIER

The ALJ decided that the Plaintiff was not disabled because his ALJ-determined RFC permitted him to perform his past work as cashier. In order to determine whether Plaintiff could perform his past relevant work, the regulations require the ALJ to compare his RFC to the requirements of his past relevant work as a cashier. 20 C.F.R. § 404.1560(b).

The Court will now recite the entire contents of the record on the subject of the requirements of the job of cashier. Plaintiff reported to the Social Security Administration that the job required him to "sit in a booth, get tickets from people in cars, a [sic] ring tickets in machine." (R. at 101) Plaintiff also reported that the job required sitting for 8 hours, lifting ten pounds occasionally, and lifting less than ten pounds frequently. (R. at 101). At his evidentiary hearing, Plaintiff testified that he could not presently perform his past job as cashier because he "can't concentrate . . . on work, period....My mind goes and comes. It just don't, it don't focus anymore." (R. at 25). Based on this evidence, the ALJ determined that "the exertional and nonexertional requirements of that job are consistent with the claimant's residual functional capacity as determined in this decision and, therefore, the claimant retains the capacity to perform 'past relevant work.'" (R. at 15).

Nowhere in the ALJ's determination is there any genuine comparison of the requirements of the position of cashier to Plaintiff's RFC. Plaintiff, in his summary judgment motion, has provided job descriptions of the twelve cashier jobs listed in the Dictionary of Occupational Titles. Plaintiff makes a convincing case that even with the ALJ-determined RFC (which he challenges based on the errors relating to Dr. Shives' opinion), he was precluded from performing all twelve of the cashier jobs.

But Plaintiff need not go so far to obtain a reversal on this ground. The only evidence in

7

the record as to the requirements of the cashier's job is that it would have required Woolridge to remain seated for 8 hours a day. By the ALJ's own assessment, Woolridge could only be seated for up to six hours of an eight hour work day. Consequently, the only evidence in the record compels a finding that the Plaintiff could not return to his previous relevant work as cashier based on the ALJ's determination of his RFC. There is not a shred of evidence in this record to support the finding that Woolridge could return to his previous relevant work as cashier.

The Commissioner, in her summary judgment motion, asserts that a cashier "is such a well-known and often-cited job, the court is able to trace the path of the ALJ's reasoning . . . ." (Def. Motion Summ. J., at 12) This is thin gruel served cold. Where there are no findings of fact about the requirements of a previous occupation and the only record evidence as to the occupation's requirements demonstrates the claimant could not perform the job, neither this Court nor any other can "trace the path of the ALJ's reasoning." Reversal and remand for further proceedings is required.

### 3. ALJ'S DETERMINATION OF WOOLRIDGE'S CREDIBILITY

Plaintiff's final argument for summary judgment is that the ALJ's determination of Plaintiff's credibility was patently wrong. Woolridge's chief medical complaint is that of severe pain in his legs. An ALJ is required to evaluate a claimant's subjective complaints of pain in determining whether he is disabled, see 20 C.F.R. § 404.1529, considering both the objective medical evidence, id. § 404.1529(b), as well as information provided by the claimant, his treating physician, or others, id. § 404.1529(c). The ALJ must also evaluate the credibility of the claimant's testimony in light of his (i) daily activities, (ii) the location, frequency, and duration of pain, (iii) precipitating and aggravating factors, (iv) the effects of medication, (v) treatment, (vi) other measure used to relieve the pain, and (vii) other facts concerning functional limitations. Id. § 404.1529(c)(3). Although the ALJ must give specific reasons for findings of credibility, see Steele v. Barnhart, 290 F.3d 936, 942 (7th Cir.2002); Social Security Ruling 96-7p (1996), these findings are entitled to deference and will not be disturbed unless "patently wrong" in light of the

record, Powers v. Apfel, 207 F.3d 431, 435 (7th Cir. 2001).

In this case, the ALJ found that Woolridge's description of the pain he suffered from was "so extreme as to render it implausible." To support this finding of implausibility, the ALJ observed that Woolridge "behaved as if he were in a great deal of pain and moved frequently during the hearing, to the point that his complaints of pain seemed exaggerated." The ALJ relied on the observance of a claims representative at the Social Security Office (another non-medical professional) to buttress the ALJ's own medical conclusions about Plaintiff's condition. (R. at 14) While it is certainly proper for an ALJ to observe the demeanor of the witness in making credibility determinations, the ALJ is once again succumbing to the temptation to play doctor. Plaintiff rightly points out the contradiction in the ALJ's assessment: "The ALJ seems to imply that Mr. Woolridge's testimony about constant pain and the inability to remain either seated or standing for long periods of time would actually have been more credible if he had remained seated and appeared to be comfortable during the hearing." (Pl. Motion Summ. J. at 13) While these quasi-medical findings are of exceedingly dubious significance, the Court must also examine the other bases for the ALJ's credibility determination.

The only other dent the ALJ makes in Plaintiff's credibility has to do with his relatively infrequent visits for medical treatment. Woolridge testified that he did not have money to pay for health services, and so he only sought treatment when he was experiencing extreme symptoms. During the hearing, when the ALJ asked directly if the Plaintiff knew he could get free treatment at Cook County Hospital, he replied, "No, I did not know that. When you go in there, these people want money, and I don't have any money." (R. at 27) In discrediting Plaintiff's testimony on this issue, the ALJ declared that free medical aid is "generally available to the indigent in this county." (R. at 14) Although there are laws that prevent emergency rooms from refusing patients treatment due to inability to pay, the ALJ's assertion about free medical aid is overbroad and definitely not supported in the record. The ALJ also noted that one of Plaintiff's medical records indicated that "he only comes when he needs disability forms." (R. at 14) This does provide

9

support for the ALJ's assessment that Plaintiff's complaints were not credible.[1]

The ALJ's assessment of Plaintiff's credibility in this case was based on a mix of permissible and impermissible factors, but it does not approach the level of credibility analysis that the regulations envision. While this Court strongly discourages placing Social Security claimants into the kind of medical credibility bind that Woolridge faced in this case, it cannot determine that the ALJ's finding on Plaintiff's credibility was patently wrong or insufficient as a matter of law. When the case is remanded on the other grounds, however, the Court expects that the ALJ will bring to bear the analytical framework envisioned by the regulations on the question of Plaintiff's credibility.

## CONCLUSION

For the foregoing reasons, the Court DENIES the Commissioner's motion, GRANTS Woolridge's motion and REMANDS the case for proceedings consistent with this opinion.

Enter:

David H. Coar
United States District Judge

Dated: August 30, 2004

---

[1] It could equally support Plaintiff's claim that he is reluctant to seek medical treatment because he feels or is made to feel that payment (which he cannot afford) is required.

10

# ORDER

The Defendant has filed a Motion to Alter or Amend this Court's judgment pursuant to Rule 59 of the Federal Rules of Civil Procedure. In its Motion, the Defendant highlights a clear error in the Court's opinion. The Court inadvertently misquoted the Administrative Law Judge (ALJ) as asserting that free medical aid is "generally available to the indigent in this **country**." Slip op. at 9. What the ALJ actually asserted is that free medical aid is "generally available to the indigent in this **county**."

The Defendant asserts that in light of the accurate quote, it is no longer correct to characterize that statement as overbroad and not supported in the record. The ALJ's assertion about the availability of medical aid is much narrower than the Court represented in its original opinion, but the two essential problems with the assertion persist. The most pressing problem with this assertion is that it is unsupported in the administrative record. The only reference to free medical aid in the administrative record is a question from the ALJ that assumed its own conclusion. (TR at 27) ("Well, do you know you could go to Cook County and get free treatment, do you know that?"). There is nothing in the record to suggest the nature and scope of the medical aid that is available to the indigent in Cook County. It is impossible to know with any certainty what the ALJ means when she says that free medical aid is "generally available to the indigent." The lack of record support for the assertion generates the second problem, which is that the assertion takes the form of a broad generalization. The regulations do not envision social security claimants being discredited on the basis of vague, unsupported generalizations.

The Defendant's Motion to Alter or Amend suggests that it is appropriate to take administrative or judicial notice of the nature of the public health system in Cook County. While that may be true in some cases, the Court does not believe it is appropriate in the facts of this case. In this case, the Plaintiff testified that he was unaware of the availability of free medical aid in Cook County. His testimony on the subject was: "When you go in there, these people want money, and I don't have any money." (TR at 27.) The ALJ did not ask him a single follow-up question on the subject. Under these circumstances, it seems singularly inappropriate to take administrative or judicial notice of the public health system to undermine Plaintiff's credibility. The Court noted in its original opinion, the ALJ's credibility determinations receive deference in this forum. It is for that reason that the Court did not find in its original opinion that the ALJ's credibility determination was patently wrong. While the Court is grateful to the Defendant for highlighting a plain error in its opinion, correcting the error changes the analysis only slightly and it changes the outcome not at all.